UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

MOHAMED ABUHAMRA,

Defendant.

---

Docket No. 99-cr-131

---

DEFENDANT'S SENTENCING MEMORANDUM

DAVID GERALD JAY
Attorney for Defendant
69 Delaware Ave., Suite 1103
Buffalo, New York 14202-3801
Tel: (716) 856-6300

## Preliminary Statement

This memorandum has been prepared with the view that since <u>Booker</u> has lifted the yoke of the USSG from the necks of federal criminal defendants, untied the hands of District Courts and our Circuit has suggested that consideration of the Guidelines does not mean slavish perpetuation of its many faults and injustices, <u>United States v. Crosby</u>, that there is a new age of options available to a District Court when considering an appropriate sentence.

The sentence urged here for the defendant Abuhamra is just that: fair, just and proper, taking into consideration the Guidelines but fashioning an appropriate sentence which will do justice in this case.

## Linda Mohawk

As to Abuhamra, Mohawk's testimony is most troubling, especially when considering its meaning as to the level of involvement of this "Mike". As the Court will recall, when first she was presented with invoices labeled Exhibit 50-B, she acknowledged that she had reviewed them all but had not satisfied herself that the orders were all for "Mike" Abuhamra.

- 1 -

> Q. And they all say Mike or for Mike?
>
> A. Yes
>
> Q. And that would be who?
>
> A. It could be a number of Mikes.
>
> Q. There were a number of Mikes?
>
> A. There was -- yes, there was more than one Mike. [Trial Transcript, p. 289]
>
> \* \* \*
>
> Q. I think we'll go back to this. Miss Mohawk. [Trial Transcript, p. 293]

After the evening's recess, the other Mikes miraculously disappeared from view and every invoice was laid at the feet of the defendant Abuhamra.

That tactic might have been good for the trial but the Mohawk testimony is suggested to be less than an adequate foundation for sentencing purposes. There is a nagging suspicion that her rendition of the Abuhamra involvement was less than candid.

### The Invoices

There has been a complete failure to match the invoices to the substantive counts. The Government's case rested upon the claim that the "Mike" invoices "proved" Abuhamra's involvement on

- 2 -

certain dates. Such proof was never presented. It is suggested that the substantive counts were proved only by the presence of Abuhamra at the smokeshop on the days in question. There was no tracking of invoices referable to him on those days. Therefore, there is no reliable way to utilize sales on those days as a measure of Abuhamra's involvement in a quantitative way, fixing his responsibility for a tax loss based on his activity.

### Conspiracy

There is a finding by the jury of the existence of a conspiracy. It is suggested that a reasonable view of the proof really demonstrates that the activity of Abuhamra was limited to the level which the amended PSI reported: Total Offense Level of 11, yielding a guideline imprisonment range of 8 to 14 months.

Each participant, including Abuhamra, was doing their own thing. There was a loose connection but for sentencing purposes, each defendant should be viewed separately and judged as to his own involvement.

Since Abuhamra has already served 9 months and 3 days, consideration should be given to a sentence of time served.

### Post-conviction Issues

- 3 -

Abuhamra was taken into custody after the reception of the verdict based upon the Government's assertions that he was dangerous, that others were in danger and national security might be impacted should be be released pending sentence. An in-camera proffer was made such that it convinced the Court to detain him. Apparently, a further proffer or meeting with a police official further confirmed the Government's fears, and the motion for bail pending sentence was denied.

During the argument of the appeal of that Order, the Government made a further in-camera presentation to the Court of Appeals panel with the agreement of defense counsel. The remand following that appeal cast the matter in the hands of the District Court once again and the Government failed to present the Court with the transcript of its in-camera presentation at the Court of Appeals, even though the Court of Appeals had suggested that it might be appropriate for the Government to do so.

Incredible as that may seem, the Government and the defense geared up for a testimonial hearing complete with the issuance of a subpoena by the defense to the police official who had advised the Government of his intelligence concerning the dangerousness of Mr. Abuhamra.

All of these points were avidly pursued by the press which had taken a special interest in the matter since they too had been barred from the in camera proceedings.

On the day scheduled for the hearing, December 6, 2004, the Government miraculously abandoned its concerns about his dangerousness, suggested that there was no need for a hearing and Mr. Abuhamra was released on basically the same bail which he had posted in 1999 upon his arrest. He was, however, confined to his home except for limited purposes and was directed to comply with the Pre-Trial Services monitoring by means of a Global Positioning Satellite device which would track his every move. At that point, he had been remanded for nine months and three days.

The Court on February 17, 2005, at the request of the Probation Officer in charge of Mr. Abruhama, permitted him to go to work daily and attend to other important matters, modifying his home incarceration status to home detention with electronic monitoring.

This post-conviction voyage through the criminal justice system has had its effect on the defendant. From his point of view, the Government was intitially successful in it aim

to incarcerate him without justification and although he is grateful that the Government relented, his name has been besmirched as a person not to be trusted at all, a dangerous man who must be kept apart from society.

It is suggested that this untimely and unjustifiable punishment, punishment beyond the fact of incarceration, should cause the Court to pause and give great thought to the proposition that perhaps this defendant has suffered sufficiently for his crimes. A sentence of time served or a further probationary sentence is all that should additionally occur and such a sentence will do justice given all these circumstances.

This request is not singular. Consideration has been given in the past under the then-mandatory guidelines where a person has demonstrated force of will and character which has enabled them to eschew drugs and become rehabilitated pending sentence. Surely there are many other examples that can be cited by the Court. Sentencing should be individually tailored to each defendant and give them credit for things they have had to experience or endure.

## Conclusion

The Court should, of course, consider the Guidelines;

however, justice and fairness will be served by granting Abuhamra a sentence which recognizes the curious circumstances of his case and the irreparable damage done to him during this Odyssey.

Dated:   Buffalo, New York
         April 1, 2005

                                    Respectfully submitted,

                                    DAVID GERALD JAY

                                    *[signature]*

                                    David Gerald Jay
                                    Attorney for Defendant